The last case on for argument is U.S. v. Lopez. Good morning, Ms. Goldman. Good morning, Your Honor. May it please the Court. Your Honor, I represent the appellant in this matter. And the primary point that we make in our brief is that the District Court committed procedural error when it applied a five-point enhancement for a firearm that had previously not been contemplated between the parties. Now, I say that with full understanding that the District Court, of course, is not bound by any plea agreement. What distinguishes this case, in our view, is the fact that the government clearly has the burden, of course, to prove this kind of an enhancement or any kind of sentencing enhancement. But in this particular case, wrote not on one occasion, but on two occasions, that it could not meet its burden, that it did not have direct evidence, that it did not... It was not bound by that concession? Well, to the extent that the Court itself has no independent evidence, and the government's position is that it's investigated the case, it's spoken with its cooperators in the case, and based on its own investigation, it doesn't believe that it could prove that at a FATACO hearing. So if it can establish that there was, that the firearm would have been within the scope of the defendant's knowledge, would have been foreseeable to the defendant, and, I mean, the government, I think, here is in a very uncomfortable position, it seems, because they have literally, not written once, but twice, to say, first to say we can't prove it at all, the second time to concede to some extent to the District Court by saying, well, of course, Your Honor has a right to ask this question, but the answer is we don't think we could prove it. We don't think we could prove it for these reasons. We don't think that the defendant, we think that the defendant who entered it at the last possible moment, that the defendant who was not a part of the planning, that the defendant who was encouraged to participate in this, like I said, at the last moment for the pure purpose of driving the vehicle and had no stake in the outcome and was never going to leave the vehicle, and in addition, the government informed the Court that this particular individual who was added at the last possible moment, when a gun did, in fact, come into the vehicle that the individual was driving, it was a large SUV, I think it was a Suburban, the weapon was handed to the person outside of the vehicle and outside of the driver's view, government concedes that, and then the individual enters the vehicle, sits in the last row, and has a conversation about the planning of the robbery, and the planning of the conversation is all done in English, and the government concedes that the defendant, with whom they've conferred on a number of occasions, doesn't speak English. He's a co-operator in some respect, right? Yes, he was. He was a confidential source. Known to the police. Known to the police, yes, Your Honor, but having nothing to do with this particular case. No, no, understood. So what is the rule that we articulate that instructs district courts in the future that this is a procedural error? Well, I think you lay it out in Studley. I mean, it seems to me that in Studley, this Court very clearly said what they anticipate would be required for the Court to make such a finding. Was Studley raised below as an argument on behalf of your client? In the first two briefings, Your Honor? Before the district courts, and you need to do a Studley analysis. I don't know that it occurred in the first briefing, Judge, and again, I was not the lawyer in either of those briefings. I don't believe that Studley was raised in the first briefing, and I don't recall offhand, and I can look while I have my break, as to whether or not it was raised in the second briefing, but certainly the concepts of Studley were articulated very clearly in the second briefing. And that's where the government weaned itself off a little bit of, well, we know the Court has a right to ask these questions, but we're going to give you the same answers. We can't prove it. We don't think it's appropriate. We don't think it's within the scope of the defendant's knowledge, and we don't think it's in the scope of the defendant's knowledge for all of these reasons, and the reasons that I just stated, the weapon came into the person. Does the government's concession then thereby bind the court in determining facts? I think that it has to, because the only facts . . . When the government says, we're not aware of any evidence . . . We can't prove this. It's our burden, and we can't prove it. And we've talked to our witnesses . . . And by the government's position that there is insufficient evidence. I would say at the very least, if the court wanted to have its own hearing and do its own fact-finding, I would imagine that the court would have the right to do that. But here, what the court said is, it had to be obvious to this defendant, because he had to assume that it wasn't going to be done with fans or ropes or water balloons or something like that. So I think water balloons might have been a different case. Is it clear from the record, though, that he would have given the same sentence, even without the specific enhancement? I don't know that I would say that, Judge, because in fact, ultimately, he doesn't give the same sentence, as he appears to be contemplating. When I came on board, after the second sentencing proceeding, and after he then remanded the defendant, who sort of panicked at the time, realizing that he was no longer facing 18 to 24 months, He gave plenty of notice. The district court gave plenty of notice to the defendant ahead of that time that he was thinking about this, though, right? Oh, no question, Judge. Yeah, no question. And of course, this is out of the defendant's hands, because this has really become an esoteric argument between the government, in a sense, and the court, because the government has steadfastly said, we could not prove it. We know the facts. We've investigated the case, and we know the facts, and we can't prove it. We can't prove that this would have been within the scope of this defendant's knowledge in jointly undertaken activity. That's what the Second Circuit requires. And in addition, we can't prove that it would have been foreseeable to this defendant. So if, I mean, perhaps if the judge had, in the district court, thought a more appropriate sentence was a higher sentence, maybe there were grounds to do that. But I think the particular ground, for example, the judge also enhanced by one point, because the amount of money that was sought to be robbed was over a certain amount of money. And that was something that is a fact the court could find from what was in the pre-sentence report. That's fine. I think the court also added another point. I'm blanking at the moment on what, but they did add another point. The court did add another point that, again, was something that was within the realm of the court's ability to see. It was the addition for one point for money and one point for the amount for the drugs. Those, the court had a right to change. But with respect to this particular five-point enhancement, if the government is saying, we can't prove it, we've investigated it, we can't prove it, I don't see how without some sort of fact-finding hearing the district court can substitute its facts, whatever they were. Thank you, Ms. Kellman. With the record. Thank you, Judge. May it please the Court, my name is Eli Mark. I'm an assistant United States attorney in the Southern District of New York. I represent the United States on appeal, and I also represent the United States below at sentencing. Judge Hall, as Your Honor noted, it's the district court judge's determination to make these factual findings in order to determine and properly calculate the guidelines. That, the factual findings here, particularly what was focused on, of whether the defendant knew or reasonably should have foreseen that a gun was going to be used. This is a wonderful reason why I love the Southern District U.S. attorney practice of having the trial also . . . on the trial level also do the appeal. But I take it, as close as I can come, is that you actually, quietly, don't have to say it, but you made it clear that you think that the defendant should have, under all the circumstances, including whether he knew there was a gun, think that he should have gotten a lower sentence, but that's up to the judge and not up to you. And the judge was within the law in giving the sentence that he did. Is that oversimplification, plain wrong? Candidly, Judge Sack, I think it's . . . We always expect candor from the government. Of course, Your Honor. We rarely get it. So, I will attempt to reach the standard that should be set of the government, which is the highest, which is that what I believe happened here is the government, broadly speaking in the office, took a conservative view of weighing all of the evidence. Like, the defendant really sort of focused on whether there was actual, particular actual knowledge. Like, do cooperating witnesses actually have a discussion with the defendant to determine whether he knew or didn't know? The government had multiple cooperating witnesses. Those witnesses just didn't speak with the defendant. And so, when viewed all the evidence, the government took a conservative view of that evidence and said, look, given the standard here, while admittedly it's low, it's a preponderance, we're going to reserve on that. But now, all of that evidence was presented to Judge Sullivan. None of that evidence was in dispute at all. And Judge Sullivan said, look, I view that evidence and I find, my reasonable inferences are, that he did actually know, or even if he didn't know, he reasonably foreseen that. Now, when this Court is reviewing those determinations, that's a clear error of standard of review. I mean, the question, and all evidence should be viewed in the light most favorable to Judge Sullivan's determinations. Now, plainly, where there might be . . . But I think that is appropriate here since the district court was the fact finder here. Right. But there might be two different reasonable viewpoints. I mean, the government, and the government stands by the plea agreement and obviously took that position. But the government even below, and I'll point your honors to what I think Ms. Kelman was pointing to, which was at 106 of the appendix, said it plainly would be reasonable for the court to find that he actually knew or reasonably foresaw it. But the government stands by its plea agreement. And that proof, and just to go through it quickly for your honors, all of which was unobjected to below, was the particular nature of the offense that we're talking about here. I mean, a robbery of another drug dealer of more than 2 kilograms of cocaine. The defense were all on the offense. I mean, he was the driver. He was also a lookout. He could have been there for protection. Those were all things that were in the PSR that were not objected to. The co-conspirator's actions around him in the car, these co-conspirators, including the cooperating witnesses, all freely spoke about the details of the planning of the robbery. That's suggestive that he also knew. They had the gun in the vehicle with him. That's also suggestive that they all thought that he knew. And I think Judge Sullivan was within his right to make that inference. Also— Mr. Mark, may I take you to what I inferred from Judge Droney's question earlier? Would Judge Sullivan have imposed the same sentence in any event? Yes. And that's our last argument in the brief, which is I think clearly Judge Sullivan, who is very, very detailed in his explanations of his sentence, gave a lengthy explanation. And while he did reference the gun, I think the clear report of that is the defendant knowingly took part in a robbery. And the nature of this offense, even if one was to credit the defendant's argument that he didn't know about the gun, was the nature of this offense is so significant and the risk of somebody who would take part in this is so much that he did not see that society could accept a lower sentence. And so I don't think, to Judge Droney's question earlier, I think Judge Sullivan made it very clear on the record that the guidelines were not what was driving him in this sort of particular determination. Because when he's saying the guidelines aren't driving, I think what he's implicitly saying is this particular dispute is not driving that determination. His belief in weighing all of the characteristics, the good that he did weigh for the defendant, as well as the particular nature of the defense, counseled in favor of this sentence. Can I, if the presider will allow me to explain, that it sounds like I'm taking some of the questions lightly. I certainly am not. It's just to find you in this very interesting and unusual position of taking one and then the other leads to that. But, of course, this is a very serious matter, and I didn't mean to suggest otherwise. Oh, I completely understood it that way, Your Honor. Just lastly, to the one point of the Studley analysis, and Studley was not raised below. I can only think it's a bit of a red herring since it really deals with jointly undertaken activity. But even if the court, so that should be reviewed for plain error, but even if the court wanted to sort of entertain the Studley analysis, I mean, this is uniquely jointly undertaken activity. The defendant pled guilty to a robbery with others, in the plural. He was in the vehicle with the others. He was in the vehicle with the person who possessed the firearm. The application notes particularly talk about robberies as jointly undertaken activity, and even if you were going to consider each of those particular points that Studley points, looks at, which is really trying to determine jointly undertaken activity for things where there's a sort of vast conspiracy. Each of those points would support the fact that this was jointly undertaken activity, including that the defendants pooled their profits, they worked together, they assisted each other. So this was uniquely jointly undertaken activity. The gun was clearly in furtherance of the activity, and Judge Sullivan's findings and the reasonable inferences that he drew from the undisputed evidence in the record all supported his determination that the defendant knew or it was reasonably foreseeable to him that . . . He came on the day of the robbery. He was recruited by his nephew, but it wasn't that he was just there for a minute. He was there. They picked up the source. They drove then for more than 30 minutes. He actually helped, and this is in the PSR . . . A lot of this happened, but the planning for this had all taken place, and then somebody didn't show up, and Mr. Lopez was brought in, right? A little bit different, but yes, he was brought in on the last day. But he was . . . I mean, he was a knowing participant in the robbery. Okay. Unless Your Honors have any further questions, the government will rest on its submission. Thank you very much. Ms. Kelman? As my kids were growing up, they always said that I had an extremely twisted ability to view facts in any kind of objective way. And it made their lives harder, I think. Not the other way with them, though. But on the other hand, today, it just seems to me that I'm not that person today, because it seems to me that the facts below, as were laid out in the government's own brief, not my brief, the government's brief, were very . . . Late, late comer was the government's expression in its presentation to the district court. A late, late comer, wasn't involved in the planning, that had gone on for a considerable period of time, was a minor player. Not a four-point minor player, because this was a robbery, but the government agreed to give this individual a three-point reduction for being a minor player. The government just stood here and said, well, there was discussion in the car, and there was a gun in the car. But in their brief to the district court, not once, but twice, and in oral argument to the district court, the government said very plainly, any discussion that happened in the car happened in English, and this defendant doesn't speak English. They said that the gun was given to the individual outside the car, outside of the view of this defendant, and that it was hidden in the car, and that if there was any ability to see it, it was in the third row of a suburban. It was the government that pointed out that it was a very large vehicle, and that the driver couldn't possibly have seen it. Just to kind of rip off a drug dealer of two kilos of drugs in the Bronx, don't you think you might think there's somebody in the team here who might have a gun to do that? That's one of the things that Judge Sullivan focused on, was really? Well, I think that is what Judge Sullivan focused on, Your Honor, 100 percent correct, except that we don't know even the extent from having not had a hearing, we don't know the extent of what the defendant knew, other than the fact that there was going to be a robbery of a drug dealer. It's reasonable foreseeability, isn't it? Isn't it reasonably foreseeable that you're going to rip off a drug dealer in the Bronx, two kilos of cocaine, that somebody might have a gun that's doing this? I think that if the government had any facts that supported that, they would have presented those to the court. They had the ability to have a hearing, and not only that, they put in their own papers that they didn't believe, based on their investigation, which included debriefing a cooperator. Based on their investigation, they didn't believe that there was any reason for that to have been foreseeable. They didn't believe that that would have been in the scope of any jointly- In the sentencing letter, before the sentencing, they did say, but we think there's enough here for the court to make that conclusion. They did, notwithstanding the facts that they found and the fact that they made it clear to the court that they didn't think they could withstand the burden if it were to go to a hearing. And I think that, I mean, why do we have FATICO hearings? Why do we have any sentencing hearings? If the point isn't for the government to prove its case, maintain its burden, not to have the court respectfully make up what it thinks is really, you know, what's in its own mind. And frankly- Let me give you just a hypothetical, which has set aside the gun and everything else. Judge Sullivan listens to all of the circumstances around this and is aware of it from the PSR and says, you know, I don't think this is a guideline sentence. I think this is something that deserves the sentence that it turns out he now imposed. Would you be here arguing? No. I wouldn't be. And, in fact, what I did in- But did he say that? But he didn't say it in a vacuum, Judge. He said it in the context of having the facts that do contradict that position. And I think that that's a meaningful distinction. You know, the reality here is I didn't argue in my presentation. I didn't argue the discrepancy because I knew that the judge had made up his mind. And as many years as he and I have argued, I knew that that was probably a losing battle. And so I took a different position, which was just the social impact to this individual and his home and his family. And I think that the little bit of consideration in terms of the new guidelines that the judge gave that, I think, was a function of not dealing with the disagreement, the disagreements among the parties, but rather that there was another area of consideration that the court was permitted to go to. I think that there's another- Oh. Am I done? I think you're done. Let me ask you. I thought I had a minute and 24 seconds left. No, no. It's going on. We'd be here all day if you keep watching that clock. Yeah. I'm picking a jury in an hour. You're here as a member of the panel, are you not? Yes, I am, Your Honor. Since you and I have had interchanges over the past, I don't know how many times I've been here. I just, for myself, and I'm sure I speak for my colleagues here, but just thank you for your continuing service on the panel. It's my pleasure. Much appreciated. Thank you, Judge. And Mr. Mark, nice to meet you and thank you. That being the end of our business today, I will ask the clerk please to adjourn court. Court is adjourned.